UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
JAMES PALESE,

                Plaintiff,

  -against-                            **MEMORANDUM & ORDER**
                                                    Case No. 12-CV-5853 (FB) (VVP)

TANNER BOLT & NUT, INC. and JEFFREY
TANNENBAUM,

                Defendants.
----------------------------------------------------------x

*Appearances:*
| | |
|---|---|
| *For the Plaintiffs*: | *For the Defendants*: |
| DAVIS S. FEATHER, ESQ. | DOMENICK LEONARDI, ESQ. |
| Law Offices of David S. Feather | The Law Offices of Lee A. Schwartz |
| 666 Old Country Road, Suite 605 | 445 Broad Hollow Road, Suite 205 |
| Garden City, NJ 11530 | Melville, NY 11747 |

**BLOCK, Senior District Judge**

      Plaintiff James Palese ("Palese") alleges in his Amended Complaint that defendants retaliated against him by terminating his employment in violation of Title VII, the Family Medical Leave Act, New York Executive Law § 296, and Title 8 of the New York City Administrative Code. He also alleges breach of an Employment Agreement and two Asset Purchase Agreements. While there is no serious dispute that the retaliation claims and the alleged breach of the Employment Agreement are subject to an agreement between the parties to arbitrate those claims, the parties disagree on whether the claims alleging breach of the Asset Purchase Agreements are arbitrable.

**I**

      Defendant Tanner Bolt & Nut, Inc. ("Tanner") sells building supplies and

1

equipment, and defendant Jeffrey Tannenbaum ("Tannenbaum") is its president. In 2010, Palese, the owner of two companies—HermansCentral.com, Inc. ("HermansCentral") and R&T Building & Service Corp. ("R&T Building")—agreed to sell both to Tanner. In connection with the sale, Tanner agreed to hire Palese as the General Manager of the new Herman's Hardware Division of Tanner, which would include Palese's former companies. The parties entered into multiple agreements to memorialize the arrangements.

Under the Employment Agreement, dated and executed on June 8, 2010, Tanner hired Palese for a 5-year term ending May 31, 2015. The Employment Agreement has an extensive arbitration clause which includes, in relevant part:

> *All claims, disputes and other matters* in question between the parties to this Agreement *arising out of or in any way relating to Employee's employment* by Tanner or this Agreement or the breach thereof, shall be decided by an arbitration to be conducted in Kings County, State of New York.

Pl.'s Am. Compl. Ex. B, § 10(d) (emphasis added).

The Asset Purchase Agreements—dated and executed for R&T Building on June 4, 2010, and for HermansCentral on June 8, 2010—effected the sale and transfer of the companies' assets from Palese to Tanner. Both Asset Purchase Agreements include an identical "Governing Law Disputes" clause which reads in full:

> All questions pertaining to the validity, construction, execution and performance of this Agreement shall be construed and governed in accordance with the laws of the State of New York, without giving effect to the conflicts or choice of law provisions thereof. Any dispute arising under this Agreement shall be settled in any court of competent jurisdiction located in the State of New York, County of Kings, and to the extent not otherwise subject to the jurisdiction of such courts Seller and Shareholder agree to waive any objection to such jurisdiction and agree to subject themselves to the jurisdiction of

2

such court.

Pl.'s Am. Compl. Ex. A and Defs.' Letter, Sept. 20, 2013, Ex. A, Asset Purchase Agreements for HermansCentral and R&T Building, § 13(f). These agreements provide that part of the consideration for each company includes a sum payable by delivery of a promissory note.

The Employment Agreement and Asset Purchase Agreements were linked together. Section 7(i) of the Employment Agreement references the sale of the assets of HermansCentral and R&T Building in restrictive covenants that place extensive limitations on Palese's ability to solicit and conduct business with customers of his former companies. And Section 12 explicitly references the Asset Purchase Agreements in allowing a right of offset, which permits Tanner to deduct from Palese's salary amounts needed to satisfy obligations under the indemnification provisions of the Asset Purchase Agreements. Collectively, the documents—including the agreements, customer lists, and the promissory notes that were given in partial consideration for the sale of Palese's companies—formed an integrated deal, which the defendants do not contest and Palese's Amended Complaint makes explicit:

- Palese's *hiring by Tanner Bolt arose in connection with the sale of the assets* of HermansCentral.com, Inc. and R&T Building & Service Corp., companies Palese owned and operated.

- *As part of the agreement* to sell HermansCentral.com and R&T Building & Service Corp. to Tanner Bolt, *Tanner Bolt agreed to hire Palese* pursuant to the terms and conditions of a written employment agreement.

Pl.'s Am. Compl. ¶¶ 27-28 (emphasis added).

Over time, the relationship soured, culminating in the end of Palese's employment

with Tanner in March 2012. Palese alleges that Tanner stopped paying on the promissory notes shortly thereafter. On June 25, 2012, Palese filed charges of discrimination and retaliation with the EEOC; on November 28, 2012, he commenced this suit; and on April 9, 2013, he filed his Amended Complaint.

On September 20, 2013, the Court held a pre-motion conference on defendants' proposed motions to compel arbitration and to dismiss under Rule 12(b)(6), and directed the parties to submit letter-briefs on the only disputed matter: whether the claims alleging breach of the two Asset Purchase Agreements are subject to the arbitration agreement contained in the Employment Agreement. Palese argues that the "employment agreement has nothing to do with the Notes," and, furthermore, that the Governing Law Disputes clause (a forum selection clause) in the Asset Purchase Agreements precludes arbitration. Pl.'s Letter to the Court, Oct. 30, 2013. Defendants argue that all claims are arbitrable because they are part of an integrated transaction and fall within the scope of a broadly worded arbitration clause.

For the following reasons, the Court agrees with the defendants, and grants summary judgment independent of a motion under FED. R. CIV. P. 56(f)[1] to compel arbitration of all claims in the plaintiff's Amended Complaint.

**II.**

"The [FAA] creates a body of federal substantive law of arbitrability, applicable to

---

[1]"After giving notice and a reasonable time to respond, the court may consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute." FED. R. CIV. P. 56(f)(3). The parties were given notice by the Court at its pre-motion conference.

any arbitration agreement within the coverage of the Act." *Bank Julius Baer & Co., Ltd. v. Waxfield, Ltd.*, 424 F.3d 278, 281 (2d Cir. 2005) (quoting *State of N.Y. v. Oneida Indian Nation of N.Y.*, 90 F.3d 58, 61 (2d Cir.1996)) (internal quotations omitted). "In deciding whether a dispute is arbitrable, we must answer two questions: (1) whether the parties agreed to arbitrate, and, if so, (2) whether the scope of [that] agreement encompasses the claims at issue." *Id.* at 281-82 (internal quotations omitted).

If there is an agreement to arbitrate, courts follow additional steps to determine the answer to the second question of whether a dispute is within the scope of the clause. "We have stated that a court should decide at the outset whether "the arbitration agreement [is] broad or narrow." *Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 23 (2d Cir.1995). The Second Circuit has described as "classically broad" those statements that include phrases such as "any controversy or claim between [the parties] arising out of or relating to . . ." an agreement or other event contemplated by the parties. *Mehler v. Terminix Int'l Co.*, 205 F.3d 44, 49 (2d Cir.2000). A determination that the clause is broad gives rise to a "presumption of arbitrability." *Id.*; *see also*, *Collins,* 58 F.3d at 20 ("If broad, then there is a presumption that the claims are arbitrable."). Indeed, if "the agreement is a broad one," then "the court must compel arbitration unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Id.* at 49 (internal quotations and citations omitted). "The issue sought to be arbitrated need not constitute a breach of the contract containing the arbitration clause. Rather, the relevant question is whether the dispute '*arises out of*' or '*relates to*' that contract." *Id.* at 50 (emphasis in original).

5

Finally, given "the strong federal policy in favor of arbitration, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Bank Julius,* 424 F.3d at 282 (internal quotations omitted).

The language of the arbitration clause in the Employment Agreement, providing that "all claims . . . in any way relating to Employee's employment by Tanner" are arbitrable, is comparable to that which the Second Circuit has described as "classically broad." *Mehler*, 205 F.3d at 49. (providing as an example: "any controversy or claim between [the parties] arising out of or relating to . . ."). Thus, there is a "presumption of arbitrability," because this is a broad agreement. *Id.*

To determine whether Palese's claims fall within the broad language of the arbitration clause, the Court must "focus on the factual allegations in the complaint rather than the legal causes of action asserted. If the allegations underlying the claims 'touch matters' covered by the parties' . . . agreements, then those claims must be arbitrated, whatever the legal labels attached to them." *Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 99 (2d Cir. 1999) (quoting *Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*, 815 F.2d 840, 846 (2d Cir. 1987)). Palese's Amended Complaint identifies the connection between his employment with Tanner and his allegations about Tanner's non-payment of the promissory notes:

> The truth is that *Palese was terminated in retaliation for objecting to [defendants'] constant racist, illegal and discriminatory conduct. . . . Not only did Palese lose his job* at Tanner Bolt, *but now Tanner Bolt, in further*

6

> *retaliation, has also stopped paying on the promissory notes* arising out [of] the sale of Palese's businesses to Tanner Bolt.

Pl.'s Am. Compl. ¶ 73-74 (emphasis added). In other words, the essence of Palese's allegation is that Tanner retaliated against him in two ways—first by firing him, and second, in "further retaliation," by stopping payment on the promissory notes—in response to a single cause: Palese's objections to his employer's "constant racist, illegal and discriminatory" workplace conduct. *Id.*

This allegation contrasts sharply with that of a sister circuit case, *Rosenblum v. Travelbyus.com*, 299 F.3d 657 (7th Cir. 2002), where a broad arbitration clause in an employment agreement was found not to apply to a claim alleging breach of a related acquisition agreement. In *Rosenblum*, in addition to the contract breach, the plaintiff alleged fraud under the acquisition agreement, but made no claims related to employment. The Seventh Circuit concluded: "The arbitration clause is not susceptible to an interpretation that includes this dispute, which has *nothing to do with Mr. Rosenblum's employment* with Travelbyus." *Id.* at 664 (emphasizing that Rosenblum's claims about breach of the acquisition agreement were unaccompanied by any employment-related claims) (emphasis added). *Rosenblum* would be strongly persuasive here if Palese had not alleged that stopping payment on the promissory notes related to his employment, but Palese did the opposite: he alleged that "not only" did he "lose his job," but that Tanner "in further retaliation" stopped paying the notes because of his on-the-job complaints about discrimination. Pl.'s Am. Compl. ¶ 73-74.

Given the broadly worded arbitration clause that reaches any claim that relates to

7

Palese's employment by Tanner, and the rule from *Mehler* that an "issue sought to be arbitrated need not constitute a breach of the contract containing the arbitration clause," the Court concludes that Palese's claim that Tanner breached the Asset Purchase Agreements—in further retaliation for Palese's objections to his employer's conduct—is a matter that relates to Palese's employment. *Mehler*, 205 F.3d at 50. Thus, the claims are within the scope of the arbitration clause of the Employment Agreement.

### III.

Palese also argues that, even if the arbitration clause covers his claim that defendants breached the Asset Purchase Agreements by retaliating through nonpayment of the notes, the forum selection clause in the agreements vitiates the arbitration clause. This argument is unavailing under the facts and reasoning of the Second Circuit's decision in *Bank Julius*.

*Bank Julius* presented the court with multiple sets of related agreements, where an arbitration clause appeared in two sets of the agreements, and a third set included a forum selection clause designating a New York state or Federal Court. Rejecting the district court's analysis, the Second Circuit held that the forum selection clause—even accompanied by a merger clause purporting to supersede the other agreements—did not vitiate the agreement to arbitrate.[2]

For its reasoning, the *Bank Julius* court relied extensively on "a very similar case"

---

[2] The Second Circuit separately held in Part III.A of its *Bank Julius* decision that a merger clause—comparable to one contained in the Asset Purchase Agreements in this case—did not vitiate the parties' agreement to arbitrate. Palese did not raise a similar argument in his letter-brief, but even if he had it would also be unavailing. *See Bank Julius,* 424 F.3d at 283 (providing thorough analysis of the merger clause issue).

from the Third Circuit, *Patten Securities Corp. v. Diamond Greyhound Genetics*, 819 F.2d 400 (3d Cir. 1987), and quoted a forum selection clause which said:

> This Agreement shall be governed by and construed and enforced in accordance with the internal laws of the State of New Jersey, and the Company hereby consents and will submit to the jurisdiction of the courts of the State of New Jersey and of any federal court sitting in the State of New Jersey with respect to controversies arising under this Agreement.

*Bank Julius*, 424 F.3d at 284 (quoting *Patten*, 819 F.2d at 407 n.3.). The Second Circuit then wholly adopted the *Patten* court's reasoning:

> The same reasoning can—and in our view, should—be employed here. The Forum Selection Clause can be understood, as the Third Circuit did, as complementary to an agreement to arbitrate. The Forum Selection Clause merely requires [respondent] to submit to suit in the courts of New York. It may be read, consistent with the Arbitration Agreement, in such a way that the [petitioner] and [respondent] are required to arbitrate their disputes, but that to the extent the [petitioner] files a suit in court in New York—for example, to enforce an arbitral award, or to challenge the validity or application of the arbitration agreement—[respondent] will not challenge either jurisdiction or venue. In addition, the Forum Selection Clause makes no reference to arbitration, and so is at least ambiguous. That being so, [d]oubts [about arbitrability] should be resolved in favor of coverage.

*Id.* at 284-85.

The facts and analysis here are similar. Although the forum selection clause in *Patten* is not identical to the language in the Asset Purchase Agreements, the differences are not <u>material</u> in any way because the court's reasoning focused on two things: (1) the ability to read the clauses as complementary, and (2) the absence of any reference to arbitration. *Bank Julius*, 424 F.3d at 284 (quoting *Patten*, 819 F.2d at 407 n.3., and adopting the Third Circuit's reasoning).

9

As in *Bank Julius*, the forum selection clause in the Asset Purchase Agreements can be read as complementary to the arbitration agreement, i.e., "in such a way that the [petitioner] and [respondent] are required to arbitrate their disputes, but that to the extent the [petitioner] files a suit in court in New York—for example, to enforce an arbitral award, or to challenge the validity or application of the arbitration agreement—[respondent] will not challenge either jurisdiction or venue." *Id.* at 284-85.

Moreover, "[c]onspicuously absent from the forum selection clause . . . is any reference to arbitration whatsoever" in the Asset Purchase Agreements, and because "the Forum Selection Clause makes no reference to arbitration," it is "at least ambiguous." *Id.* at 284. "That being so, [d]oubts [about arbitrability] should be resolved in favor of coverage." *Id.*

Given that the forum selection clause does not mention arbitration, Palese's reliance on *AT&T Technologies v. Comm's. Workers of Am.*, 475 U.S. 643 (1986), is also misplaced. In *AT&T*, the Supreme Court said that arbitration clauses do not cover disputes when there is a "clear, unambiguous exclusion" from arbitration of particular issues. *Id.* at 647 (internal quotations omitted). But such examples are rare, and when courts have found them, they are explicit. *See, e.g.*, *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 583 (1960) (identifying contract language that said, "matters which are strictly a function of management <u>shall not be subject to arbitration</u>," as a clear exclusion); *State of N.Y. v. Oneida Indian Nation of N.Y.*, 90 F.3d 58, 61 (2d Cir.1996) (recognizing an exclusion that stated: "A claim by the State that the Nation is conducting a Class III gaming activity not authorized by this Compact is <u>not subject to mandatory arbitration</u>.") (emphasis

10

added). Where express exclusions are lacking, the party opposing arbitration must clear a high bar: "In the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *Steelworkers*, 363 U.S. at 584. Despite briefing the matter, Palese has made no such showing.

Thus, in light of precedent and the "strong federal policy in favor of arbitration," *Bank Julius,* 424 F.3d at 282, the Court holds that, as a matter of law, the forum selection clauses contained in each Asset Purchase Agreement do not vitiate the arbitration clause contained in the Employment Agreement.

## IV.

For the foregoing reasons, summary judgment is granted for the defendants pursuant to FED. R. CIV. P. 56(f) to compel arbitration of all claims set forth in the plaintiff's Amended Complaint.

**SO ORDERED.**

_____
FREDERIC BLOCK
Senior United States District Judge

December 5, 2013
Brooklyn, New York